IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | MO-09-CR-238 |
| | § | |
| JOHN CHRISTOPHER BRUNSON | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Suppress Evidence (Doc. No. 20) of the Defendant, John Christopher Brunson ("Defendant" or "Brunson"). The Court held a hearing on this motion on January 14, 2010. At the conclusion of this hearing, the Court indicated that the motion would be denied. The Court, therefore, now issues its memorandum opinion and order denying the motion to suppress evidence.

### I. BACKGROUND

This matter involves a search warrant for the Defendant's residence at 5757 North Long Avenue in Odessa, Texas. The warrant was signed by United States Magistrate Judge David Counts on September 3, 2009. The Defendant's Motion argues for suppression on two grounds: that the warrant was not supported by probable cause and that it lacked sufficient particularity in describing the items to be seized in the search. The Court finds both arguments without merit.

The facts of this case originate with an individual named Alan Clark who lives in Vancouver, British Colombia. At a date not specified in the search warrant affidavit, Clarke was participating in a Yahoo.com internet chat room from his home in Vancouver. *See* Government's Response (Doc. No. 25), Ex. 1, Search Warrant Affidavit, at 3. While in the chat room, Clarke made contact with a male individual who asked him to go to a private chat room where their conversation became

sexual in nature. In the private chat room, the unidentified male told Clarke that he was "looking to get naughty" with his own three-year-old daughter. Clark asked "what can a 3-year-old do with daddy" and the individual replied "she can play with daddies big dick and if I can get her to, suck me." *Id.*

The two then connected via web cam, allowing them to see live images of each other. Clarke could see a small female toddler and it soon became clear that the male was about to engage in the described conduct with the child. The unidentified male, however, became suspicious and terminated the chat when Clarke began asking about some items in the background such as military patches, a military uniform, and other personal information. Once the chat was terminated, Clarke contacted the Royal Canadian Mounted Police ("RCMP") and asked for a constable to respond to his home because he was extremely concerned for the child.

Pursuant to an investigation of the incident, RCMP cooperated with the United States Immigration and Customs Enforcement ("ICE") office in Vancouver and established the following possible name and address for the unidentified male: Chris Howell, 3101 N. Moss, Odessa, Texas. This name and address, as well as a transcript of the chat session and images that the person suspected to be Chris Howell sent of himself to Clarke, were sent from the ICE office in Vancouver to the ICE office in Midland, Texas.

In Midland, ICE Special Agent Juanita Santana began an investigation. On August 31, 2009, at approximately 9:00 p.m., she traveled to the address provided by ICE Vancouver. When she arrived, Agent Santana observed that the address was a vacant lot that was previously a manufacture home park with a few inhabitable structures. In furtherance of her investigation, Agent Santana found and visited web pages that Chris Howell maintained on social networking internet sites. One such page was on the website MySpace, where Howell described himself as a "naughty dad looking

for a naughty mom." He further described himself as "very open minded" and interested in "military history, guns, 'Air Soft,' camping, and fishing."

Assisting in the investigation, ICE Special Agent Heath Hardwick conducted further research into the group "Air Soft." On Air Soft's MySpace page, Agent Hardwick found a member by the name of "John Lnu", who had similar characteristics to Chris Howell, including the same listed hobbies, interests, status, high school, and age. Furthermore, both profiles contained similar typographical errors, and both profiles contained a profile picture of the same person.

The agents compared the photographs of Howell sent by ICE Vancouver with the profile pictures of Chris Howell and John Lnu on MySpace. Upon comparison, the agents determined that the photographs were of the same person. The man in the photographs was a white male with short hair wearing prescription glasses. Furthermore, in the background of the MySpace profile photographs of Howell and Lnu, agents could see framed art with military patches similar to that described by Clarke.

Agents continued to review John Lnu's MySpace page. A search of Lnu's "friends" revealed one named "Jeffery" and one called "One Hot Mama & One Kool Daddy." A review of "One Hot Mama's" MySpace page showed her name was Marie Howell, married to Jeffery Mark Howell and their residence to be 808 North Graham Avenue, Odessa, Texas.

On September 2, 2009, several Midland ICE agents traveled to this residence attempting to establish the true identity of John Lnu/Chris Howell. At approximately 5:45 p.m., the agents, assisted by Odessa Police, arrived at the home of Marie and Jeffery Howell. Marie Howell answered the door and invited the agents into her home. Jeffery Howell was also at the residence along with the couple's three year old twins. Agent Santana showed pictures of John Lnu/Chris Howell to Jeffery and Marrie Howell. Both immediately identified the man in the photographs as the

Defendant in this case; John Brunson, about 33 years old, a friend of the family, married to Ariel Brunson, with a three year old daughter named Aubrey. The Howells also provided directions to Brunson's residence as well as a description of the residence and the vehicles Brunson owned – a white Chevrolet Suburban and a maroon Ford Explorer. The agents traveled to the address provided by Marie and Jeffery Howell – 5755 N. Long Avenue, Odessa, Texas – took photographs of the home, and observed the two vehicles described by the Howells parked at the residence.

The agents returned to the Howells' residence and showed the Howells the photographs they had taken of 5755 N. Long Avenue. The Howells confirmed the house in the photographs as the place where Brunson, along with his wife and child, reside. The Howells also claimed that the residence was owned by Brunson's in-laws whose last name is Johnson. Agents queried the Ector County Appraisal district and learned that the property located at 5757 N. Long Avenue (the property next door to 5755 N. Long) is owned by Harland and Nancy Johnson.

On September 3, 2009 at approximately 7:00 a.m., while conducting surveillance on the residence, ICE Agent Rodriguez observed Brunson depart 5755 N. Long Avenue in his 2004 Ford Explorer and travel to his place of employment.

Based on all the above information, on September 3, 2009, Judge Counts signed a search warrant for the residence at 5757 North Long Avenue. Attachment B to the warrant, which is incorporated by reference on the face of the warrant, describes the items to be seized by citing federal statutes that prohibit the production of images of children engaged in sexually explicit conduct. Specifically, it states that the items subject to the seizure consist of "any and all evidence, fruits, instrumentalities pertaining to violations of Title 18 United States Code, Section 2251a; Section 2251e." The attachment then lists a variety of items that are used to store electronic data.

The warrant was executed on September 3, 2009. Pursuant to the search, agents discovered

computer files depicting sexual images of the Defendant's daughter, including images of sex acts involving the Defendant and his daughter.

## II. DISCUSSION

The Defendant now moves to suppress the fruits of the warrant on two grounds: (1) that the warrant was issued without probable cause; and (2) that the warrant was not sufficiently particular in its description of the items to be seized in the search. Each argument is addressed below.

### A. The Warrant Contained More than "Bare Bones" Allegations.

In the Fifth Circuit, a two-step process is used when ruling on motions to suppress evidence seized pursuant to a search warrant. *United States v. Flanders*, 468 F.3d 269, 270 (5th Cir. 2006). First, the court determines whether the good faith exception to the exclusionary rule applies. *Id*. If it does, the motion to suppress is denied without further inquiry. *Id*. If the good faith exception does not apply, however, the court must scrutinize the magistrate's probable cause finding.

Under the good faith exception, a warrant will be upheld so long as an officer's reliance on the warrant was objectively reasonable. *United States v. Leon*, 468 U.S. 897, 921-25 (1984). With respect to probable cause, an officer's reliance on a warrant is objectively reasonable if the warrant is supported by more than "bare bones" allegations of criminal conduct. *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006). "Bare bones affidavits typically contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *Id*.

In light of this law, Defendant's first argument has no merit. The affidavit in this case certainly contains more than the "bare bones" allegations necessary to uphold the warrant under the good-faith exception. To go further – although it is not necessary to do so – the warrant affidavit contained facts sufficient to establish probable cause.

The first relevant factor is that Midland ICE Agents received reliable information from ICE in Vancouver and the Royal Canadian Mounted Police that Brunson was preparing to send child pornography to Alan Clarke over the internet. The Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238 (1983), stated that:

> The task of the [warrant] issuing magistrate judge is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

The source of information in this case is reliable. ICE Vancouver and RCMP received the information from Clarke, who personally participated in a chat room where Brunson indicated that he was preparing to send a video of himself performing sexual acts with his three year old daughter. When assessing the credibility of an informant's tip, a court should analyze the totality of the circumstances surrounding the tip; including the informant's reliability, veracity, and basis of knowledge. *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992). Where, as here, an informant provides information that he obtained first hand, the informant's veracity and basis of knowledge are very strong. *See id.*; *United States v. Fisher*, 22 F.3d 574, 579 (5th Cir. 1994). Additionally, the fact that the information was provided from one ICE agency to another makes the information highly reliable. In *United States v. Mathurin*, 561 F.3d 170 (3rd Cir. 2009), a case where ICE Puerto Rico provided a tip to ICE St. Thomas regarding a suspicious boat headed toward St. Thomas, the court stated "[w]e need not undertake the established legal methods for testing the reliability of this tip because a tip from one federal law enforcement agency to another implies a degree of expertise and a shared purpose in stopping illegal activity." *Id.* at 176. Therefore, based on the totality of the circumstances, the information provided to ICE Midland was reliable.

Not only was the source of information reliable, but the agents involved in this case corroborated the information by their own investigation, which is highly valuable in establishing probable cause. *Gates*, 462 U.S. at 241-42 (1983). The ICE agents in this case took the name of the suspect provided by ICE Vancouver (Chris Howell), and found the individual on social networking web sites. Once they located Howell's MySpace page, they compared the photographs sent by ICE Vancouver with the profile photos and determined it to be the same individual who engaged in the chat with Clarke. They, further, tracked down friends of Brunson and confirmed his identity before traveling to his home and observing him leaving from the home. This independent corroboration increases the reliability of the information and strengthens the case for probable cause.

Having determined that the source of the information was reliable, the Court must determine whether the information itself established probable cause, or, at the very least, constituted more than a "bare bones" conclusion of criminal conduct. It clearly did. The warrant affidavit showed that the Defendant engaged in an internet chat in which he agreed to send live images of himself sexually molesting his own child. Even where no images are actually sent, mere participation in an internet conversation wherein a person agrees to trade child pornography has been held sufficient to establish probable cause to support a warrant to search the individual's home. *United States v. Simpson*, 152 F.3d 1241, 1247 (10th Cir. 1998); *United States v. Rodgers*, No. 05-1455-CR, 2005 WL 3470306 at *1 (2d Cir. Dec. 19, 2005). But Brunson went further than merely agreeing to send images of child pornography. He connected with Clarke on his web cam and appeared ready to send live images of himself engaging in sexually explicit conduct with his three year old daughter. This information provided probable cause for the warrant. Therefore, the warrant affidavit contained more than "bare bones" allegations, and, in fact, was supported by probable cause.

Defendant's first argument has no merit.

**B.     The Warrant was Sufficiently Particular in its Description of the Items to be Seized.**

Defendant's second argument is that the warrant fails to satisfy the Fourth Amendment's particularity requirement, which provides that warrants shall "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Attachment B to the warrant in this case authorized seizure of "any and all evidence, fruits and instrumentalities pertaining violations of Title 18 United States Code, Sections 2251a [and] Section 2251e," which prohibits the production of images of children engaged in sexually explicit conduct. Government's Response (Doc. No. 25), Ex. 1, Warrant Attachment B, at 11. The warrant then authorizes seizure of a host of electronic media storage devices from Brunson's home. *Id.*

The Defendant first argues that a citation to the laws prohibiting the production of images of children engaged in sexually explicit conduct is not good enough to satisfy the particularity requirement. *See* Motion to Suppress (Doc. No. 20), at 4-5. The Court disagrees. "In testing whether a specific warrant meets the particularity requirement, a court must inquire whether an executing officer reading the description in the warrant would reasonably know what items are to be seized." *United States v. Kimbrough*, 69 F.3d 723, 727 (5th Cir. 1995). Here, an executing officer would reasonably know by looking at the warrant's reference to laws prohibiting the production of child pornography that the object of the search was evidence of the production of child pornography. The description of the items to be seized, therefore, was sufficiently particular.

The Defendant fails to cite a single case involving a child pornography warrant that was invalidated because it cited only child pornography statutes. In fact, the basis for the Defendant's argument is *United States v. Leary*, 846 F.2d 592 (10th Cir. 1988), a case involving conspiracy to violate the Export Administration Act; an offense very different from the instant matter. *Id.* at 594.

The warrant in *Leary*, rather than referring to a specific type of evidence, authorized seizure of a list of items "relating to the purchase, sale and illegal exportation of materials in violation of the Arms Export Control Act, 22 U.S.C. 2778, and the Export Administration Act of 1979, 50 U.S.C.App. 2410." *Id.* The court found this description inadequate under the particularity requirement, holding that absent other limiting factors, "[a]n unadorned reference to a broad federal statute does not sufficiently limit the scope of a search warrant." *Id.* at 602. The court, however, also recognized that "some federal statutes may be narrow enough to meet the fourth amendment's [particularity] requirement" but the statutes at issue in that case were not. *Id.* at 601.

This Court finds *Leary* distinguishable from, and, therefore, inapplicable to this case. The laws cited by this warrant – 18 U.S.C. § 2251(a) through (e) – cover one specific activity: the production of images of children engaged in sexually explicit conduct. Perhaps more importantly, the type of evidence that can be reasonably thought to be subject to seizure under such laws is narrow; namely, images of children engaging in sexually explicit conduct and the objects used to create those images. By contrast, the statutes cited by the warrant in *Leary* – 22 U.S.C. § 2778 and 50 U.S.C. App. 2410 – cover a much broader range of conduct. For example, 22 U.S.C. § 2778, the "Arms Export Control Act" regulates the import and export of so-called "defense articles," which, pursuant to the statue, can be any object that is determined by the President of the United States to be a "defense article." 22 U.S.C. § 2778(a)(1). Such defense articles, furthermore, are kept on "The United States Munitions List," which contains hundreds of items. *See* 22 C.F.R. § 121.1, *et seq.* Additionally, the activities covered under the statute include, *inter alia*, "brokering activities," which, covers a range of conduct including "the financing, transportation, freight forwarding, or taking of any other action that facilitates the manufacture, export, or import of a defense article or defense service." *Id.* § 2278(b)(1)(A)(ii)(II). Therefore, because the laws cited in this warrant cover

a limited range of conduct and support the seizure of a limited type of evidence, this warrant's citation to child pornography laws was "narrow enough to meet the fourth amendment's requirement." *Leary*, 846 F.2d at 601.

Next, Defendant argues that the warrant is insufficiently particular because it lists a variety of computer storage devices to be seized. Defendant's Motion to Suppress (Doc. No. 20), at 4-5. However, "[i]n circumstances where detailed particularity is impossible, generic language is permissible if it particularizes the types of items to be seized." *Kimbrough*, 69 F.3d at 727. Establishing particularity under a child pornography warrant presents a unique challenge for law enforcement because child pornography can be stored electronically in a variety of storage devices. For this reason, the Fifth Circuit has upheld warrants in child pornography cases that, like this warrant, authorize seizure of a range of materials and electronic devices so long as the warrant specifies that the object of the search is child pornography. *See id.* at 727; *United States v. Layne*, 43 F.3d 127, 132-33 (5th Cir. 1995). As one district court recently opined in upholding a warrant that authorized seizure of various forms of electronic media that may have contained child pornography: "Given that [the defendant] could have stored files containing child pornography almost anywhere on his computer (or on other storage media), the warrant was as specific as it could have been under the circumstances." *United States v. Clark*, 524 F.Supp.2d 896, 901 (W.D. Mich. 2006). Based on these cases, the warrant at issue is sufficiently particular. The warrant authorizes seizure of a broad range of electronic devices but makes clear, by citing child pornography laws, that it is limited to seizure of images of child pornography and the devices used in its production. The Defendant's second argument, therefore, has no merit.

Even if this warrant were not sufficiently particular, the Court would uphold it under the good faith exception to the exclusionary rule. In the seminal case on particularity and the good faith

exception, the Supreme Court concluded that the officers' good faith reliance on an insufficiently particular warrant was objectively reasonable where the affidavit was reviewed and approved by the district attorney; the affidavit was presented to a neutral judge, who found that it established probable cause; the affiant informed the judge that changes might need to be made to the affidavit and observed the judge make changes before deciding it established probable cause. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 (1984). This case presents a very similar situation. First, Judge Counts determined that this warrant established probable cause for the search. In fact, as established by Agent Santana's testimony at the hearing, Judge Counts required her to clarify the affidavit and make changes before it was authorized. Second, Agent Santana reviewed her affidavit with an Assistant United States Attorney before presenting it to Judge Counts. Third, Agent Santana was the affiant of the warrant affidavit and also led the search of Brunson's home. *See United States v. Cherna*, 184 F.3d 403, 412 (5th Cir. 1999) (upholding warrant on good faith ground s where affiant also led execution of warrant). Fourth, the warrant affidavit contains an extremely detailed account of the investigation. *Id.* Finally, assuming this warrant was insufficiently particular, minor corrections would have made it valid. *Id.*; *United States v. Shugart*, 117 F.3d 838, 845-46 (5th Cir. 1997). The warrant in this case would have clearly been valid had it stated that the object of the search was evidence of "the production of visual images of children engaged in sexually explicit conduct" rather than citing the laws prohibiting such conduct. *See Layne*, 43 F.3d at 133 (finding description of items to be seized as "child pornography" sufficient); *United States v. Hurt*, 808 F.2d 707 (9th Cir. 1987) (finding that a search warrant which authorized the search of material depicting children under the age of 16 engaged in "sexually explicit conduct" to be particular enough). *See also, Simpson*, 152 F.3d at 1247 ("courts have acknowledged that such generalized descriptions as 'child pornography' are adequate to convey to the officer executing the search warrant the nature of

the material sought."). Given all these factors, a reasonable officer would have "believed that the search they conducted was authorized by a valid warrant." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984).

## III. CONCLUSION

None of Defendant's arguments support suppressing the evidence. The warrant affidavit established more than bare bones allegations of criminal conduct, and, in fact, established probable cause. Additionally, "Attachment B" to the warrant affidavit was sufficiently particular in its description of the items to be seized from the Defendants home, and, if it was not, it was at least sufficient to support the executing officers' good faith belief that they were acting on a valid warrant. Therefore, the Court issues the following **ORDER**:

The Defendant's Motion to Suppress (Doc. No. 20) is **DENIED**.

**SIGNED** this 28 Day of January, 2010.

ROBERT JUNELL
United States District Judge
Western District of Texas